IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Jimmy G. Gilchrist, ) | |
| ) | Civil Action No. 5:11-01746-MBS-KDW |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER AND OPINION** |
| Eliane Pinson; John Doe #1; Mrs. Greer; ) | |
| Gregory Nolan; John Doe #2; John Doe #3; ) | |
| Tessie Smith; Mr. Kammerer; Ms. Coleman; ) | |
| all in their official and individual capacities, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Jimmy G. Gilchrist ("Plaintiff"), an inmate with the South Carolina Department of Corrections ("SCDC"), filed this 42 U.S.C. § 1983 action on July 22, 2011, alleging that Defendants violated his constitutional rights. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., on July 22, 2011, the within action was referred to United States Magistrate Judge Kevin F. McDonald for pretrial handling. ECF No. 2. On October 10, 2011, Defendants filed a motion to dismiss. ECF. No. 18. On October 14, 2011, the Magistrate Judge filed an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the consequences if he failed to adequately respond to Defendants' motion to dismiss. ECF No. 21. Plaintiff responded to Defendants' motion to dismiss on October 27, 2011. ECF No. 23. On January 2, 2012, the matter was reassigned to Magistrate Judge Kaymani D. West. ECF No. 41.

Plaintiff is an inmate housed at the Manning Correctional Institution ("Manning") in Columbia, South Carolina. ECF No. 1 at 2. Plaintiff alleges that his constitutional rights were violated when he was transferred between three prison facilities within the SCDC. Plaintiff avers

that when he was transferred, his custody status was revoked, and he lost his earned work credits. ECF No. 1 at 23. Plaintiff contends that he possesses a state-created liberty interest in his custody status that cannot be taken away without due process. *Id.* Plaintiff argues that his custody status constitutes a protected liberty interest because, when the SCDC changes a prisoner's custody status, the prisoner loses whatever earned work credits he had accrued, which in effect lengthens the duration of the prisoner's sentence. *Id.* Plaintiff seeks monetary damages and injunctive relief.

## I. FACTS

The following facts are according to Plaintiff's complaint. On the morning of May 12, 2009, Plaintiff was working on the farm at the Walden Correctional Institution ("Walden") when a prison official ordered him to change out of his work clothes. *Id.* A prison official placed Plaintiff in handcuffs and returned him to the prison facility where he was eventually placed in leg irons. *Id.* Plaintiff asked Sergeant Howard, who is not a defendant in this case, what he had done wrong, but Sergeant Howard told Plaintiff that he would find out later. *Id.* At around 12:15 p.m., Sergeant Howard told Plaintiff that he was going to be placed in "lock-up" and transferred to the Turbeville Correctional Institution ("Turbeville"). *Id.* Although Plaintiff was unaware of why he was being transferred, a prison official told Plaintiff that his custody status would change automatically because Plaintiff was moving from a "minimum out" camp to a "minimum in" camp, a higher level security facility. *Id.*

On May 14, 2009, Plaintiff appeared before the classification board at Turbeville. *Id.* at 24. Defendant Greer, Plaintiff's classification caseworker at the time, attended and signed off on the decision to change Plaintiff's custody status. *Id.* Plaintiff attempted to explain to the board

that he did not agree with its decision, but before he could, an officer instructed Plaintiff to leave. *Id.* On the same day, Plaintiff's sister contacted "Headquarters" and spoke with Arthur Houston, who is not a defendant in this case, regarding her brother's transfer from Walden to Turbeville. *Id.* Houston indicated that the transfer request had come from Walden and that he had signed the paper work that effected the transfer. *Id.* Houston further indicated that Plaintiff had not been in trouble at Walden. *Id.* Next, Plaintiff's sister contacted Defendant Pinson, the warden at Walden. *Id.* Defendant Pinson told Plaintiff's sister that she had signed off on the transfer because Plaintiff had been deemed a "security risk" but that she did not know the specific reason why Plaintiff had been given that designation. *Id.* at 24-25. Plaintiff's sister also contacted Turbeville and spoke with Defendant Greer, who was also unaware of the reason for Plaintiff's transfer. *Id.* at 25. On May 15, 2009, Defendant Greer informed Plaintiff that the reason for his transfer concerned an incident involving a tractor. *Id.* at 25. Plaintiff never received a formal notification from SCDC explaining why his minimum out custody status had been revoked. *Id.*

On May 21, 2009, Plaintiff filed a "Step One" grievance that challenged SCDC's decision to transfer Plaintiff from Walden to Turbeville, thereby changing his custody status. *Id.* In Plaintiff's grievance, Plaintiff asserted that he possessed a liberty interest in his custody status, insofar as a change in custody status affected his earned work credits, and that SCDC deprived him of that interest without due process. *Id.* at 10-11. Defendant Nolan, the warden at Turbeville, denied the grievance on August 10, 2009. *Id.* at 10. Plaintiff filed a "Step Two" grievance on August 20, 2009, that Defendant John Doe #2 denied on December 18, 2009. *Id.* at 12. The author of the denial reasoned that "[d]ue to security concerns involved, [Plaintiff was] reduced in custody and transferred to a more secure facility." ECF No. 1 at 12. The author went

3

on to note that "an inmate's custody classification involves the exercise of discretion in regards to security need." *Id.* On February 9, 2010, Plaintiff appealed that decision to a state administrative law court, and on July 2, 2010, the court dismissed the appeal, finding that Plaintiff did not have a liberty interest in his custody status. *Id.* at 13-16.

On October 13, 2010, SCDC transferred Plaintiff from Turbeville to Walden, where Plaintiff had previously been held, and then on October 18, 2010, SCDC transferred Plaintiff to Manning, where he resides today. *Id.* at 26. The effect of those transfers was to elevate Plaintiff's custody status from minimum out to minimum out restricted, a higher level security classification. *Id.* Defendant Smith, the warden at Walden, and Defendant Kammerer, who recommended Plaintiff for the "minimum restricted out" classification, signed off on the transfers. *Id.* The transfers and change in custody status took place without a disciplinary hearing. *Id.* On November 2, 2010, Plaintiff filed a grievance, arguing that he was denied due process when SCDC changed his custody status without providing a hearing. *Id.* at 6. Defendant Coleman denied the grievance, noting that the transfer did not affect Plaintiff's custody status because Manning, like Warden, is a minimum out institution. *Id.*

## II. DISCUSSION

Plaintiff seeks an injunction to restore his earned work credits and damages in the amount of $100 for each day he was deprived of his minimum out custody status. *Id.* at 28. On October 10, 2011, Defendants filed a motion to dismiss on the following grounds: (1) Plaintiff has failed to demonstrate that he has a state-created liberty interest in his security classification; (2) Plaintiff has no cognizable claim under 42 U.S.C. § 1983; and (3) the complaint fails to state facts sufficient to constitute a cause of action. ECF No. 18.

4

The Magistrate Judge found that a constitutionally protected liberty interest is not implicated when an inmate is transferred from one prison to another, unless the location of imprisonment posed an atypical hardship or exceeded the sentence imposed. *See Sandin v. Connor*, 515 U.S. 472, 483-84 (1995). Finding no atypical hardship or enlarged sentence, the Magistrate Judge concluded that Plaintiff's change in custody status alone does not amount to a due process violation. Second, the Magistrate Judge determined that Plaintiff's § 1983 claim bears on the duration of his sentence, insofar as Plaintiff alleges that the change in custody status affected his earned work credits. The Magistrate Judge concluded that the claim fails as a matter of law because Plaintiff must challenge the duration of his sentence pursuant to 28 U.S.C. § 2254(b). *See Preiser v. Rodriguez*, 411 U.S. 475 (1973). Relatedly, the Magistrate Judge determined that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Plaintiff's lawsuit because the complaint alleges a constitutional defect that, if successfully established, would implicitly question the appropriate amount of time Plaintiff has left to serve on his sentence. Accordingly, the Magistrate Judge recommended that Defendants' motion to dismiss be granted.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the report or specified proposed findings or recommendations to which an objection is made. The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The court may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

Plaintiff has filed a litany of objections, few of which focus on the dispositive parts of the Magistrate Judge's findings and many of which reiterate the same contentions Plaintiff set forth in his complaint and brief in opposition to motion to dismiss. Plaintiff argues that *Heck* does not control because *Heck* involved a § 1983 claim that challenged the validity of a criminal conviction and this case arises out of an administrative decision within the prison system. ECF No. 55 at 7. Plaintiff maintains that *Preiser* does not control because the purpose of his lawsuit is not to ensure a speedier release from prison but to vindicate the protected liberty interest he has in his custody status. *Id.* at 7-9. Elsewhere in Plaintiff's objections, however, Plaintiff asserts that the issue is "whether the SCDC can revoke Plaintiff's custody status without providing minimum due process protection when the [earned work credits are] based on custody thus, making the custody level a protected liberty interest." *Id.* at 8. As the court interprets that statement, the question is not whether custody status alone constitutes a protected liberty interest, but whether custody status, when tied to a prisoner's earned work credits, constitutes a protected liberty interest.

A prisoner does not possess a protected liberty interest in maintaining a particular custody status, or in being housed in one prison facility versus another. *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995); *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Likewise, a prisoner does not possess a protected liberty interest in the opportunity to earn work credits, even if those credits could shorten the duration of a prisoner's sentence. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). By contrast, it is well-settled that a prisoner's statutory right to sentence-related credits is a protected liberty interest that may not be denied without due process. *Id.*; *Sandin*, 515 U.S. at 477-78. In *Wolff*, Nebraska prisoners challenged prison

officials' revocation of "good-time credits" without due process. *Id.* at 544-45. The Court held that "the Due Process Clause itself does not create a liberty interest in credit for good behavior, but that the statutory provision created a liberty interest in a shortened prison sentence which resulted from good-time credits, credits which were revocable only if the prisoner was guilty of serious misconduct." 418 U.S. at 557 (internal quotation marks omitted).

Before a prisoner may be deprived of a protected liberty interest in sentence-related credits, he must be given some procedural protection. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*). This includes: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Id.* Additionally, "some evidence" must support the decision by prison officials to revoke good-time credits. *Id.* at 455.

Here, to the extent Plaintiff argues that his custody status alone is a protected liberty interest, his claim fails under *Sandin*. If, however, Plaintiff contends that his custody status is a protected liberty interest by way of its relationship to his earned work credits, then it is comparable to the liberty interest recognized in *Wolff*. S.C. Code Ann. § 24-13-230(D) provides for work and education credits that can reduce the term of a prisoner's sentence. Under Subsection D, "[i]f a prisoner commits an offense or violates one of the rules of the institution during his term of imprisonment all or part of the work credit or education credit he has earned may be forfeited in the discretion of the official having charge of the prisoner." Under *Wolff*, however, a prisoner must be afforded procedural protection before being deprived of sentence-

7

related credits. Plaintiff alleges in his complaint that the transfers and custody status reclassifications that took place in May 2009 and October 2010 reduced his earned work credits. To what extent the status of Plaintiff's earned work credits changed, Plaintiff has not pleaded in detail. In any case, Plaintiff alleges that prison officials told him on both occasions that his transfers and reclassifications were the result of disciplinary infractions that rendered Plaintiff a "security risk." Plaintiff asserts that on neither occasion did he receive the due process protection that the Court in *Wolff* held is required when sentence-related credits are at stake. ECF No. 55 at 6.

Plaintiff adequately pleads that his custody status, insofar as it affects his earned work credits, is a protected liberty interest. Nevertheless, the court need not consider whether Plaintiff has adequately alleged that the process he received fell short of the standard set forth in *Wolff*, because Plaintiff's claims are barred by the holdings from *Preiser* and *Heck*. In *Preiser*, a group of prisoners in New York brought a § 1983 lawsuit alleging that the Department of Correctional Services' denial of good-time credits violated their constitutional right to due process. 411 U.S. 475 (1973). The prisoners sought an injunction to have their credits restored. *Id*. at 476-77. The Court held that although the claims were technically within the scope of section 1983, the "challenge is just too close to the core of habeas corpus as an attack on the prisoner's conviction, for it goes directly to the constitutionality of the confinement . . . itself and seeks immediate release from that confinement or the shortening of its duration." *Id.* at 489. While the holding in *Preiser* concerned injunctive relief, in *Heck,* the Court held that a state prisoner's claim for damages is not cognizable under § 1983 where success of the action would implicitly question the validity of the conviction or duration of the sentence, unless the prisoner can demonstrate that

the conviction or sentence has been previously invalidated. 512 U.S. 477, 487 (1994). The Court subsequently extended the ruling in *Heck* to bar a prisoner's claim for damages regarding loss of sentence-related credits. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The Court has further observed that the holdings of *Heck* and *Balisok*,

> taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005).

In this case, Plaintiff makes a claim for injunctive relief and damages. The request for injunctive relief seeks to have Plaintiff's earned work credits restored and the claim for damages seeks $100 for each day Plaintiff was without his minimum out custody status. In asking the court to restore his earned work credits, Plaintiff seeks relief that would, in effect, shorten the duration of his sentence, a result barred by *Preiser*. Likewise, Plaintiff's claim for damages is barred. Unless a decision bearing on the duration of a prisoner's sentence has already been invalidated, the court cannot award damages when doing so would imply the invalidity of prison officials' decision to revoke sentence-related credits. To award damages for each day Plaintiff has lived without his minimum out custody status would be to implicitly hold that the process by which Defendants denied Plaintiff his earned work credits was constitutionally deficient. Because that process has not already been held invalid, § 1983 does not provide Plaintiff a remedy.

## III.  CONCLUSION

Accordingly, after a thorough review of the Magistrate Judge's Report and Recommendation and the record in this case, the court adopts the Magistrate Judge's Report and Recommendation and incorporates it herein by reference.  Defendants' motion to dismiss is granted.

**IT IS ORDERED.**

                                                      s/ Margaret B. Seymour
                                                     Margaret B. Seymour
                                                      Chief United States District Judge

Columbia, South Carolina
September 19, 2012