IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Jimmy G. Gilchrist, ) | |
| ) | Civil Action No. 5:11-01746-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER AND OPINION** |
| Eliane Pinson; John Doe #1; Mrs. Greer; ) | |
| Gregory Nolan; John Doe #2; John Doe #3; ) | |
| Tessie Smith; Mr. Kammerer; Ms. Coleman; ) | |
| all in their official and individual capacities, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Jimmy G. Gilchrist ("Plaintiff"), filed this action pursuant to 42 U.S.C. § 1983, on July 22, 2011, alleging that Defendants violated his constitutional right to due process. At the time of filing, Plaintiff was an inmate with the South Carolina Department of Corrections ("SCDC"), but he has since been released.[1] On October 10, 2011, Defendants filed a motion to dismiss. ECF. No. 18. On October 14, 2011, United States Magistrate Judge Kevin F. McDonald filed an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the consequences if he failed to adequately respond to Defendants' motion to dismiss. ECF No. 21. Plaintiff responded to Defendants' motion to dismiss on October 27, 2011. ECF No. 23. On July 26, 2012, Magistrate Judge Kaymani D. West issued a Report and Recommendation in which she recommended that

---

[1] In a letter dated December 5, 2011, Plaintiff informed the court that he is no longer incarcerated. ECF No. 38. The court takes judicial notice that according to the South Carolina Department of Probation, Parole and Pardon Services website, Plaintiff began community supervision on December 1, 2011, which supervision is scheduled to end on November 30, 2013. *See* http:// www.dppps.sc.gov/results.asp (last visited July 10, 2013); *see also McCormick v. Wright*, C.A. No. 2:10-cv-00033-RBH, 2010 WL 565303 at *2 n.5 (D.S.C. Feb 17, 2010) (court may take judicial notice of factual information located in postings on government websites).

Defendants' motion to dismiss be granted. ECF No. 50. In an order entered on September 19, 2012 (the "September order"), the court granted Defendants' motion to dismiss. ECF No. 58. This matter is before the court on Plaintiff's motion for reconsideration pursuant to FED. R. CIV. P. 59(e). ECF No. 61.

## I.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The following facts are according to Plaintiff's complaint. On the morning of May 12, 2009, Plaintiff was working on the farm at the Walden Correctional Institution ("Walden") when a prison official ordered him to change out of his work clothes. *Id.* A prison official placed Plaintiff in handcuffs and returned him to the prison facility where he was eventually placed in leg irons. *Id.* Plaintiff asked Sergeant Howard, who is not a defendant in this case, what he had done wrong, but Sergeant Howard told Plaintiff that he would find out later. *Id.* At around 12:15 p.m., Sergeant Howard told Plaintiff that he was going to be placed in "lock-up" and transferred to the Turbeville Correctional Institution ("Turbeville"). *Id.* Although Plaintiff was unaware of why he was being transferred, a prison official told Plaintiff that his custody status would change automatically because Plaintiff was moving from a "minimum out" camp to a "minimum in" camp, a higher level security facility. *Id.*

On May 14, 2009, Plaintiff appeared before the classification board at Turbeville. *Id.* at 24. Defendant Greer, Plaintiff's classification caseworker at the time, attended and signed off on the decision to change Plaintiff's custody status. *Id.* Plaintiff attempted to explain to the board that he did not agree with its decision, but before he could, an officer instructed Plaintiff to leave. *Id.* On the same day, Plaintiff's sister contacted "Headquarters" and spoke with Arthur Houston, who is not a defendant in this case, regarding her brother's transfer from Walden to Turbeville. *Id.* Houston

indicated that the transfer request had come from Walden and that he had signed the paper work that effected the transfer. *Id.* Houston further indicated that Plaintiff had not been in trouble at Walden. *Id.* Next, Plaintiff's sister contacted Defendant Pinson, the warden at Walden. *Id.* Defendant Pinson told Plaintiff's sister that, as the warden, she had signed off on the transfer because Plaintiff had been deemed a "security risk" but that she did not know the specific reason why Plaintiff had been given that designation. *Id.* at 24-25. Plaintiff's sister also contacted Turbeville and spoke with Defendant Greer, who was also unaware of the reason for Plaintiff's transfer. *Id.* at 25. On May 15, 2009, Defendant Greer informed Plaintiff that the reason for his transfer concerned an incident involving a tractor. *Id.* at 25. Plaintiff never received a formal notification from SCDC explaining why his minimum out custody status had been revoked. *Id.*

On May 21, 2009, Plaintiff filed a "Step 1" grievance that challenged SCDC's decision to transfer him from Walden to Turbeville, thereby changing his custody status. *Id.* In Plaintiff's grievance, he asserted that he possessed a liberty interest in his custody status, insofar as a change in custody status affected his earned work credits, and that SCDC deprived him of that interest without due process. *Id.* at 10-11. Defendant Nolan, the warden at Turbeville, denied the grievance on August 10, 2009. *Id.* at 10. Plaintiff filed a "Step 2" grievance on August 20, 2009, that Defendant John Doe #2 denied on December 18, 2009. *Id.* at 12. The author of the denial reasoned that "[d]ue to security concerns involved, [Plaintiff was] reduced in custody and transferred to a more secure facility." ECF No. 1 at 12. The author went on to note that "an inmate's custody classification involves the exercise of discretion in regards to security need." *Id.* On February 9, 2010, Plaintiff appealed that decision to the South Carolina Administrative Law Court, and on July 2, 2010, the court dismissed the appeal, finding that Plaintiff did not have a liberty interest in his

custody status. *Id.* at 13-16. Plaintiff does not allege, nor do the records attached to his complaint show, that he pursued additional remedies.

On October 13, 2010, SCDC transferred Plaintiff from Turbeville to Walden, where Plaintiff had previously been held, and then on October 18, 2010, SCDC transferred Plaintiff to Manning. *Id.* at 26. The effect of those transfers was to elevate Plaintiff's custody status from minimum out to minimum out restricted, a higher level security classification. *Id.* Defendant Smith, the warden at Walden, and Defendant Kammerer, who recommended Plaintiff for the "minimum restricted out" classification, signed off on the transfers. *Id.* The transfers and change in custody status took place without a disciplinary hearing. *Id.* On November 2, 2010, Plaintiff filed a Step 1 grievance, arguing that he was denied due process when SCDC changed his custody status without providing a hearing. *Id.* at 6. Defendant Coleman denied the grievance, noting that the transfer did not affect Plaintiff's custody status because Manning, like Warden, is a minimum out institution. *Id.* Plaintiff does not allege, nor do the records attached to his complaint show, that he pursued additional remedies.

Plaintiff alleged in his complaint that his constitutional right to due process was violated when he was transferred from Walden Correctional Institution to Turbeville Correctional Institution on May 12, 2009, and then to Manning Correctional Institution on October 18, 2010. ECF No. 1 at 23. Plaintiff alleged that when he was transferred, his custody status was revoked. *Id.* Plaintiff argued that his custody status constituted a protected liberty interest because when SCDC changes a prisoner's custody status the prisoner loses whatever earned work credits he has accrued, which in effect lengthens the duration of the prisoner's sentence. *Id.* Plaintiff sought an injunction to restore his earned work credits, declaratory relief, and damages in the amount of $100 for each day he was deprived of his minimum out custody status.

4

In the September order, the court held that Plaintiff adequately pleaded that his custody status constituted a protected liberty interest, due to the claimed relationship between custody status, earned work credits, and the duration of a prisoner's confinement. Nevertheless, the court held that *Preiser v. Rodriguez*, 411 U.S. 475 (1973), and *Heck v. Humphrey*, 512 U.S. 477 (1994), barred Plaintiff's § 1983 action. According to *Preiser* and *Heck*, when a prisoner files a lawsuit that concerns the appropriate length of incarceration, habeas relief, rather than § 1983, is the proper remedy.

In the September 19, 2012 order granting Defendants' motion to dismiss, the court adopted the recommendation of the Magistrate Judge. However, the Report and Recommendation incorrectly referred to Plaintiff as an inmate, when in fact, he was no longer an inmate at the time the Report and Recommendation was filed. ECF No. 50 at 1. Plaintiff's motion for reconsideration is addressed below.

## II. STANDARD OF REVIEW

FED. R. CIV. P. 59(e) provides a mechanism for an aggrieved party to petition the court to alter or amend a judgment under certain limited circumstances. "In general, reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat'l Fire Ins.*, 148 F.3d 396, 403 (4th Cir. 1998). Motions for reconsideration are inappropriate merely to introduce new legal theories or new evidence that could have been adduced during the pendency of the prior motion. *Keene Corp. v. Inter'l Fid. Ins. Co.*, 561 F. Supp. 656 (N.D. Ill.), *aff'd*, 736 F.2d 388 (7th Cir. 1982). Also, "[b]ecause of the interests in finality and conservation of judicial resources, Rule 59(e) motions are not at the disposal of an unsuccessful party to rehash the same arguments and facts previously presented." *Keyes v. Nat'l R.R. Passenger*

*Corp.*, 766 F. Supp. 277, 280 (E.D. Pa. 1991) (internal citation and quotations omitted). The Fourth Circuit recognizes only three limited grounds for a district court's grant of a motion under Rule 59(e): (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice. *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). The Fourth Circuit has emphasized that counsel's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion. *Id.* at 1082 (citing *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990)).

### III. DISCUSSION

Plaintiff puts forth two arguments that are germane to the court's application of *Preiser*/*Heck*, which was dispositive in the September order.[2] The court will address those arguments first. The court will then discuss how Plaintiff's release from prison during the pendency of this lawsuit bears on the viability of his § 1983 action.

**A.** *Motion for Reconsideration*

In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), a group of prisoners in New York brought a § 1983 lawsuit alleging that the Department of Correctional Services' denial of good-time credits violated their constitutional right to due process. The prisoners sought an injunction to have their credits restored. *Id.* at 476-77. The Court held that although the claims were technically within the

---

[2] Plaintiff appears to takes issue with the court's analysis in the September order of whether he adequately pleaded that he was deprived of a protected liberty interest. Because the court's analysis in that regard resulted in a determination favorable to Plaintiff, the court need not revisit the issue. Also, Plaintiff raises an issue concerning the Magistrate Judge's recommendation that the three John Doe defendants be dismissed for Plaintiff's failure to identify and serve them within 120 days after filing his complaint. Plaintiff accuses Defendants of "deliberately stalling Plaintiff [sic] efforts to identify the John Does[.]" ECF No. 61 at 1. The court need not address the issue as it is not relevant to the dispositive issue in the September order.

scope of § 1983, the "challenge is just too close to the core of habeas corpus as an attack on the prisoner's conviction, for it goes directly to the constitutionality of the confinement . . . itself and seeks immediate release from that confinement or the shortening of its duration." *Id.* at 489. While *Preiser* concerned injunctive relief, in *Heck v. Humphrey,* 512 U.S. 477(1994), the Court held that a state prisoner's claim for damages is not cognizable under § 1983 where the success of the action would implicitly question the validity of his conviction or sentence, unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated. This is referred to as the "favorable termination" requirement. *Id.* at 492.

Plaintiff asserts that *Heck* does not bar his § 1983 action. Plaintiff appears to argue that *Heck* only applies to cases involving challenges to procedures used during judicial proceedings rather than "to cases about disciplinary proceedings or other administrative action." ECF No. 61 at 3. The court disagrees. In *Edwards v. Balisok*, 520 U.S. 641 (1997), a prisoner filed a § 1983 action seeking damages and declaratory relief based on the claim that the procedures used in a disciplinary proceeding, which resulted in the deprivation of sentence-related credits, violated his right to due process. The Court held that the prisoner's claim was barred by *Heck* because, "[t]he principal procedural defect complained of by respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." *Id.* at 647. Plaintiff cites no authority, nor does the court find any, for the proposition that *Heck*'s bar only applies to § 1983 actions that attack the procedures used in a judicial proceeding but not in an administrative proceeding.

In addition, Plaintiff argues that *Preiser* does not control because he is not seeking an injunction that would restore his earned work credits, but rather a declaration that his constitutional

7

right to due process was violated, and damages for each day he was deprived of his custody status.[3] *Heck* applied the holding in *Preiser* to cover claims for damages under § 1983. Furthermore, in *Balisok*, the court held that a prisoner who, like Plaintiff, sought damages and declaratory relief, did not have a cognizable claim under § 1983. *Id.* at 648 ("[R]espondent's claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983.") As such, the nature of the relief Plaintiff seeks does not affect the *Heck* analysis.

Accordingly, Plaintiff's motion for reconsideration is without merit.

## B. *Plaintiff's Release from SCDC Custody*

The court next considers how Plaintiff's release from SCDC's custody affects the *Heck* analysis. The controlling case is *Wilson v. Johnson*, 535 F.3d 262 (4th Cir. 2008). In *Wilson*, a former prisoner brought a § 1983 action against the State of Virginia for arbitrarily extending the duration of his incarceration by four months. *Id.* at 263. The district court held that the former prisoner's action was *Heck*-barred under the favorable termination requirement, due to his failure to obtain habeas relief invalidating the disputed period of incarceration. *Id.* The Fourth Circuit reversed. The *Wilson* court held that former prisoners may in certain circumstances be exempt from *Heck*'s favorable termination requirement. The court stated,

> If a prisoner could not, as a practical matter, seek habeas relief, and after release, was prevented from filing a § 1983 claim, § 1983's purpose of providing litigants with a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nations would be severely imperiled.

---

[3] Plaintiff's complaint did in fact request injunctive relief in the form of restoration of earned work credits, ECF No. 28 at 1, but his release from prison renders that request moot.

*Id.* at 268.

In *Bishop v. County of Macon*, 484 F. App'x 753 (4th Cir. 2012) (unpublished) (per curiam), the Fourth Circuit clarified that the *Wilson* exemption to *Heck* does not apply to every § 1983 suit brought by a former prisoner who failed to obtain habeas relief while in custody. In *Bishop*, the plaintiff, after serving a thirty-six month probationary sentence during which he did not obtain habeas relief, filed a damages action under § 1983 based on the alleged unlawful search that led to his conviction. *Id.* at 754-55. The Fourth Circuit held that the plaintiff was not exempt from *Heck*'s favorable termination requirement, explaining that the *Wilson* exemption only applies when a plaintiff can show that circumstances beyond his control left him unable pursue habeas remedies. The *Bishop* court distinguished *Wilson*:

> Unlike the plaintiff in *Wilson*, who had a window of only four months to meet the favorable termination requirement (which he pursued until his release), John pleaded guilty and was sentenced to thirty-six months' probation. He did not pursue habeas relief during that thirty-six-month period. He has made no claim that habeas relief was unavailable during that time, practically or otherwise.

*Id.* at 755. The court went on to warn that "*Wilson* does not permit a plaintiff to end-run *Heck* by simply sitting on his rights until all avenues for challenging a conviction have closed." *Id.*

The analysis under *Wilson/Bishop* is sensitive to when the alleged unconstitutional action occurred in relationship to the plaintiff's release from custody. As such, the court will separately analyze Plaintiff's two alleged unconstitutional transfers and custody status revocations, which took place in May 2009 and October 2010.

With respect to the transfer and custody status revocation that occurred in May 2009, the court does not find that Plaintiff is exempt from *Heck*'s favorable termination requirement. There is no suggestion in Plaintiff's complaint that conditions beyond his control prevented him from

9

pursuing habeas relief, and unlike in *Wilson* where the prisoner had a narrow time frame of four months to pursue habeas relief, Plaintiff had two and a half years from the time he was first transferred between correctional facilities and his release from custody in December 2011. Also, the plaintiff in *Wilson* pursued "favorable termination" until his release; Plaintiff did not. Plaintiff appealed his transfer to South Carolina's Administrative Law Court (the "ALC"), but did not attempt to exhaust his state court remedies by seeking review in the South Carolina Court of Appeals, which would have been required for Plaintiff to secure federal habeas relief. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002) (relying on *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999), as authority for South Carolina to determine what constitutes exhaustion of its own remedies for purposes of federal habeas relief )); *see* S.C.CODE ANN. § 1–23–380(A). Instead, Plaintiff, while still a prisoner and before all avenues for challenging his transfer and custody status revocation had closed, brought a § 1983 lawsuit. To hold that *Wilson* exempts Plaintiff from *Heck*'s holding would run counter to the Fourth Circuit's warning that *Heck* cannot be circumvented by a plaintiff who fails to take advantage of all available rights. *See Bishop*, 484 F. App'x at 755. Thus, even though Plaintiff is no longer a prisoner, the court finds that his § 1983 suit, with respect to Defendants' actions in May 2009, is barred by *Heck*.

With respect to the transfer and custody revocation that occurred in October 2010, approximately thirteen months before Plaintiff's release from custody, the issue of *Heck*'s applicability is less clear. The shorter time frame between the alleged unconstitutional action and Plaintiff's release from SCDC custody makes it more difficult to distinguish his case from *Wilson* and liken it to *Bishop*. Nevertheless, Plaintiff, unlike the plaintiff in *Wilson*, did not pursue favorable termination until his December 2011 release from custody, as he failed to challenge his

October 2010 transfer beyond SCDC's Step 1 grievance stage.[4]  Instead, Plaintiff filed a § 1983 action before his release from custody and before all other available remedies had closed.  Even assuming Plaintiff is exempt under *Wilson* from *Heck*'s favorable termination requirement, this failure to exhaust SCDC's administrative remedies provides an alternative basis for finding that § 1983 relief is unavailable.

Under the Prison Litigation Reform Act (the "PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The statute defines the term "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  *Id.* § 1997e(h).  The Fourth Circuit has stated that a "former inmate who has been released is no longer 'incarcerated or detained' for the purposes

---

[4] SCDC provides inmates with the following procedures to file internal grievances: (1) an inmate must fill out a Form 10–5 (Step 1 grievance form) to explain his complaint and give the form to an employee designated by the warden within fifteen days of the alleged incident; (2) the grievance must then be entered into SCDC's automated system, and the IGC notified; (3) the warden should respond to the inmate in writing within forty days of the warden's receipt of the Step 1 grievance and then the IGC has five working days to provide the Step 1 response to the inmate; (4) the inmate may then appeal the warden's response by completing a Form 10–5a (Step 2 appeal) and submitting it to the IGC within five "calendar days" of the inmate's receipt of the response; (5) the IGC then notifies the IGB of the Step 2 appeal and the IGB has another five "calendar days" to get the Step 2 appeal to the responsible SCDC official (the division director of operations) for a response; (6) the division director of operations then has sixty days from the day the appeal was received by the IGC to respond to the Step 2 appeal, and finally, (7) then there is another five days for the IGC to serve the inmate with the Step 2 response.  SCDC POLICY/PROCEDURE GA–01.12, at §§ 13.1–13.6 (Oct. 1, 2010).  An inmate may appeal the denial of a Step 2 grievance to the ALC.  S.C. CODE ANN. § 1–23–380.

of § 1997e(h) and therefore does not qualify as a 'prisoner' subject to the PLRA," but "it is the plaintiff's status at the time he filed the lawsuit that is determinative as to whether the § 1997e(a) exhaustion requirement applies." *Cofield v. Bowser*, 247 F. App'x 413, 414 (4th Cir. 2007). Because Plaintiff was a prisoner at the time he filed his lawsuit, his § 1983 action is not cognizable unless he exhausted his administrative remedies. Courts within the District of South Carolina have found that an inmate exhausts his administrative remedies when he completes Step 2 of the SCDC grievance procedure, and § 1997e(a) does not require inmates to further appeal to the ALC.[5] *See, e.g.*, *Ayre v. Currie*, No. 05–3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05–2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006); *but see, e.g.*, *Maradiaga v. Bethea*, C.A. No. 4:08–0226–PMD, 2009 WL 2829900, at *3-4 (D.S.C Sept 1, 2009)(holding that under South Carolina law to fully exhaust SCDC's administrative remedies, an inmate must appeal the denial of his Step 2 grievance to the ALC). Plaintiff did not exhaust his administrative remedies because he did not file a Step 2 grievance after his Step 1 grievance had been denied. Therefore, he does not have a claim under § 1983 with respect to his October 2010 transfer and custody status revocation.

Accordingly, the court does not find that Plaintiff's release from SCDC custody during the pendency of this lawsuit affects the court's conclusion that his § 1983 action is not cognizable.

---

[5] To be clear, federal habeas law requires that inmates exhaust *state* remedies, which is different from the PLRA's requirement that inmates exhaust *administrative* remedies before filing a § 1983 action. *See* 42 U.S.C. § 1997e(a).

## IV.  CONCLUSION

Upon careful consideration, Plaintiff's motion for reconsideration, ECF No. 61, is **DENIED**. However, the court's September order, ECF No. 58, is **VACATED**, and Defendants' motion to dismiss, ECF No. 18, is **GRANTED** for the reasons set forth above.  Plaintiff's complaint is **DISMISSED**.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour  
Margaret B. Seymour  
Senior United States District Judge

Columbia, South Carolina  
July 31, 2013